**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

REGINALD MIDDLETON and
VERITASEUM, LLC,

                  Plaintiffs,

        - against -

T-MOBILE US, INC.,

                  Defendant.

No: 1:20-cv-03276 NGG-RLM

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND STAY ACTION**

**Service Date:  December 18, 2020**

John M. Magliery
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:  (212) 489-8230
Fax:  (212) 489-8340

Stephen M. Rummage (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel:  (206) 757-8136
Fax:  (206) 757-7700

James H. Moon (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel:  (213) 633-6819
Fax:  (213) 633-6899

*Attorneys for Defendant T-Mobile US, Inc.*

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  FACTUAL BACKGROUND ................................................................................... 3

    A.   Mr. Middleton Becomes a T-Mobile Customer. ......................................... 3

    B.   Mr. Middleton Repeatedly Manifests Acceptance of T-Mobile's T&Cs. ............. 3

    C.   Plaintiffs Claim Third Parties Improperly Accessed Mr. Middleton's Account. ...................................................................................................... 6

III. ARGUMENT ........................................................................................................ 7

    A.   Plaintiffs Should Be Compelled to Arbitrate Their Claims. ....................... 9

        1.   Courts Regularly Enforce T-Mobile's Arbitration Agreement. ................... 9

        2.   Mr. Middleton Repeatedly Agreed to Arbitrate Disputes With T-Mobile. ................................................................................................... 10

        3.   Veritaseum Also Must Arbitrate Its Claims against T-Mobile. .............. 12

    B.   The Arbitrator Must Decide Any Challenge to the Scope or Enforceability of the Arbitration Provision. ................................................ 14

        1.   The T&Cs Delegated Issues of Arbitrability to the Arbitrator. .............. 14

        2.   In Any Event, the Dispute Falls Within the Arbitration Provision. ........... 16

    C.   The Court Should Stay this Action Pending Arbitration. ........................... 18

IV.  CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. T-Mobile USA, Inc.*,
  2011 WL 6702424 (E.D. Cal. Dec. 21, 2011) .........................................................................9

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
  170 F.3d 349 (2d Cir. 1999)................................................................................................13

*Arkin v. DoorDash, Inc.*,
  2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) (Garaufis, J.)..................................................15

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)............................................................................................................8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)..........................................................................................................16

*Bell v. Cendant Corp.*,
  293 F.3d 563 (2d Cir. 2002)................................................................................................10

*Best Concrete Mix Corp. v. Lloyd's of London Underwriters*,
  413 F. Supp. 2d 182 (E.D.N.Y. 2006) ................................................................................12

*Butto v. Collecto Inc.*,
  802 F. Supp. 2d 443 (E.D.N.Y. 2011) ................................................................................17

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995)...................................................................................................16

*Contec Corp. v. Remote Sol., Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)................................................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)............................................................................................................8

*Denney v. Jenkens & Gilchrist*,
  412 F. Supp. 2d 293 (S.D.N.Y. 2005).................................................................................12

*Destinations by Design, LLC v. T-Mobile USA, Inc.*,
  2010 WL 1687752 (S.D. Ohio Apr. 26, 2010) ......................................................................9

*Ferro v. Allied Interstate, LLC*,
  2019 WL 3021234 (E.D.N.Y. July 10, 2019)........................................................................18

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)...................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991).............................................................................7

*Gold v. Deutsche Aktiengesellschaft*,
  365 F.3d 144 (2d Cir. 2004)..................................................................11

*Goldberg v. Sweet*,
  488 U.S. 252 (1989)...........................................................................7

*Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*,
  518 F. App'x 20 (2d Cir. 2013) .............................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).....................................................................14, 16

*Hermès of Paris, Inc. v. Swain*,
  867 F.3d 321 (2d Cir. 2017)...................................................................7

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)...................................................................8

*JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*,
  167 F. App'x. 266 (2d Cir. 2006) ...........................................................15

*Kutluca v. PQ New York Inc.*,
  266 F. Supp. 3d 691 (S.D.N.Y. 2017)......................................................10

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
  2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011)...........................................18

*McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*,
  858 F.2d 825 (2d Cir. 1988)..................................................................16

*McGinnis v. T-Mobile USA, Inc.*,
  2009 WL 4824002 (W.D. Wash. Dec. 9, 2009) ........................................9

*Mehler v. Terminix Int'l Co. L.P.*,
  205 F.3d 44 (2d Cir. 2000)....................................................................7

*Meyer v. T-Mobile USA, Inc.*,
  836 F. Supp. 2d 994 (N.D. Cal. 2011) ......................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)............................................................................8

*Mohammad v. T-Mobile USA, Inc.*,
 2018 WL 6249910 (E.D. Cal. Nov. 29, 2018) ........................................................9

*Moore v. Interacciones Global, Inc.*,
 1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) ............................................................18

*Moore v. T-Mobile USA, Inc.*,
 2012 WL 13036858 (E.D.N.Y. Sept. 28, 2012) .........................................9, 11, 17

*Moore v. T-Mobile USA, Inc.*,
 548 F. App'x 686 (2d Cir. 2013) ...........................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)..................................................................................................16

*Motise v. Am. Online, Inc.*,
 346 F. Supp. 2d 563 (S.D.N.Y. 2004)...................................................................13

*Mumin v. Uber Techs., Inc.*,
 239 F. Supp. 3d 507 (E.D.N.Y. 2017) ...............................................................8, 10

*Nicosia v. Amazon.com, Inc.*,
 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).................2, 13

*Oldroyd v. Elmira Sav. Bank, FSB*,
 134 F.3d 72 (2d Cir. 1998), *abrogated on other grounds by Katz v. Cellco
 P'ship*, 794 F.3d 341 (2d Cir. 2015) ...................................................................17

*Ortega v. Uber Techs. Inc.*,
 2017 WL 1737636 (E.D.N.Y. May 2, 2017) (Garaufis, J.) ....................................15

*Owings v. T-Mobile USA, Inc.*,
 978 F. Supp. 2d 1215 (M.D. Fla. 2013) ..................................................................9

*Ozormoor v. T-Mobile, USA, Inc.*,
 354 F. App'x 972 (6th Cir. 2009) ...........................................................................9

*Paduano v. Express Scripts, Inc.*,
 55 F. Supp. 3d 400 (E.D.N.Y. 2014) ....................................................................15

*PaineWebber Inc. v. Bybyk*,
 81 F.3d 1193 (2d Cir. 1996)..................................................................................11

*Pincaro v. Glassdoor, Inc.*,
 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017).......................................................15

*Pool Deals, LLC v. United Parcel Serv., Inc.*,
 454 F. Supp. 3d 208 (W.D.N.Y. 2020) ..................................................................12

*Preston v. Ferrer*,
   552 U.S. 346 (2009)...................................................................................7

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
   991 F.2d 42 (2d Cir. 1993)........................................................................12

*Schering Corp. v. First Databank, Inc.*,
   479 F. Supp. 2d 468 (D.N.J. 2007) ....................................................12, 17

*Schiffer v. Slomin's, Inc.*,
   48 Misc. 3d 15, 11 N.Y.S.3d 799 (2d Dep't 2015)....................................8

*SEC v. Middleton*,
   No. 1:19-cv-04625-WFK-RER (E.D.N.Y. 2019) .....................................1

*Simeon v. Domino's Pizza LLC*,
   2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019)...........................................11

*Smith Barney Shearson Inc. v. Sacharow*,
   91 N.Y.2d 39, 666 N.Y.S.2d 990 (1997) ..................................................8

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
   198 F.3d 88 (2d Cir. 1999)........................................................................12

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
   388 F. Supp. 3d 304 (S.D.N.Y. 2019).....................................................11

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995)........................................................................12

*TIC Park Ctr. 9, LLC v. Wojnar*,
   2017 WL 7733134 (E.D.N.Y. Apr. 7, 2017) ...........................................14

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003)......................................................................16

*Whaley v. T-Mobile, USA, Inc.*,
   2013 WL 5155342 (E.D. Ky. Sept. 12, 2013) ..........................................9

**Statutes**

9 U.S.C.
   § 1..........................................................................................................6, 7
   § 2..........................................................................................................6, 7
   § 3............................................................................................................18
   § 4..............................................................................................................8

N.Y. C.P.L.R. § 7501 .....................................................................................8

N.Y. G.B.L.

§ 349............................................................................................................................6

§ 350............................................................................................................................6

§ 399–c........................................................................................................................8

Defendant T-Mobile US, Inc. ("T-Mobile") respectfully submits this Memorandum of Law in Support of its Motion to Compel Arbitration and Stay Action pursuant to the Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*

## I.      PRELIMINARY STATEMENT

Reginald Middleton alleges T-Mobile negligently failed to prevent third-party "hackers" from accessing his T-Mobile line of service.  (Complaint ("Compl."), ECF No. 1, ¶¶ 6-11.)  Mr. Middleton claims the hackers launched a "campaign to victimize" him in 2017 and, after repeated attempts, took control of his T-Mobile line of service, which he used to conduct business for his cryptocurrency company, Veritaseum, LLC (collectively with Mr. Middleton, "Plaintiffs").  (*Id.* ¶ 6.)  The third parties purportedly used that access to steal "$8.7 million" in Veritaseum cryptocurrency—cryptocurrency that Plaintiffs themselves created out of thin air—on July 23, 2017.  (*Id.* ¶ 8.)  Plaintiffs assert various claims against T-Mobile based on the third parties' alleged unauthorized use of Mr. Middleton's T-Mobile line of service.  (*Id.* at ¶¶ 16-24.)[1]

This lawsuit belongs in arbitration.  Over a period of several years, Mr. Middleton repeatedly consented to T-Mobile's Terms and Conditions ("T&Cs") and thereby agreed to arbitrate disputes with T-Mobile.  In particular, the T&Cs provide for the arbitration of "any and

---

[1] This is not the first time Plaintiffs have come before this Court.  On August 12, 2019, the U.S. Securities and Exchange Commission sued Mr. Middleton and Veritaseum in the Eastern District of New York for fraudulently inflating the value of their cryptocurrency tokens.  (*SEC v. Middleton*, No. 1:19-cv-04625-WFK-RER (E.D.N.Y. 2019), ECF No. 1 ¶¶ 3, 48.)  Mr. Middleton consented to an SEC judgment against him and his company in October 2019, which required them to disgorge over $9.4 million in ill-gotten gains.  (*Id.*, ECF No. 61 at 1.)  In this action, Mr. Middleton seeks to recover from T-Mobile for the supposed "value" of the Veritaseum tokens stolen from him during the very period during which the SEC alleged he was inflating their value through misrepresentations.  Once in arbitration, T-Mobile will prove that Plaintiffs' claims fail for many reasons, including based on the two-year limitations period and limitation of liability provision agreed upon by the parties, Mr. Middleton's inability to establish any negligent or wrongful actions by T-Mobile, and principles of unclean hands and *in pari delicto*.

all claims or disputes in any way related to or concerning" T-Mobile's services, privacy policies, or devices.  (*See* Decl. of Christopher Muzio ("Muzio Decl."), Ex. B at 3 (capitalization removed).)  Although T-Mobile's T&Cs give customers the right to opt out of arbitration, Mr. Middleton did not do so.  (*Id.* ¶ 23.)  Instead, he continuously used and benefited from T-Mobile's service and assented to the arbitration provision no fewer than *eleven* times.  (*Id.*, Exs. A, F, H-O, Q.)  He is bound by his repeated agreements to arbitrate this dispute. Mr. Middleton's company, Veritaseum, likewise must arbitrate its claims under established contractual principles of estoppel and agency.  In particular, because Veritaseum alleges its claims arise from its use of Mr. Middleton's T-Mobile account (Compl. ¶ 29), it is "bound by the terms governing the account"—including the arbitration clause.  *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 272 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

To the extent Plaintiffs dispute the scope or enforceability of the arbitration provision, that dispute goes to the arbitrator, as the parties agreed.  But in any event, the arbitration agreement plainly covers the claims Mr. Middleton and Veritaseum bring against T-Mobile based on its alleged failure to protect Mr. Middleton's account from unauthorized access by third-party hackers.  Those claims arise directly from T-Mobile's provision of telecommunications services, Mr. Middleton's service agreements with T-Mobile, and T-Mobile's privacy policy regarding dissemination of customer account information.

The Court should therefore compel Mr. Middleton and Veritaseum to arbitrate their claims against T-Mobile and stay this action pending completion of that arbitration.

## II.      FACTUAL BACKGROUND

### A.      Mr. Middleton Becomes a T-Mobile Customer.

T-Mobile's business records reflect that Mr. Middleton became a T-Mobile customer in 2014, when he was added to a T-Mobile account opened by a non-party to this litigation, Obu Kwame.  (Muzio Decl. ¶ 2.)  Specifically, on March 21, 2014, a line of service ending in 5953 ("5953 Line"), which is the subject of Mr. Middleton's lawsuit, was ported into Mr. Kwame's account, which had a billing number ending in 8730 (the "8730 Account").  (*Id.*)  Later, on October 17, 2014, T-Mobile's records indicate that Reginald Middleton was added as an authorized user to the 8730 Account and on December 24, 2014, Obu Kwame requested that Mr. Middleton be designated as the Billing Responsible Party.  (*Id.* ¶¶ 3-4.).

### B.      Mr. Middleton Repeatedly Manifests Acceptance of T-Mobile's T&Cs.

Throughout Mr. Middleton's tenure as a T-Mobile customer he has repeatedly manifested his acceptance to T-Mobile's T&Cs.[2]  For example, on April 24, 2015, Mr. Middleton purchased a new phone.  Attached as Exhibit A to the concurrently submitted Declaration of Christopher Muzio is a true and correct copy of the receipt for this purchase, which was signed by Mr. Middleton.  By signing the receipt for that purchase, Mr. Middleton agreed that his "[a]ctivation or use of T-Mobile service" would constitute his "agreement to T-Mobile's Terms and Conditions[.]"  (Muzio Decl. Ex. A at 1.)  Further, the receipt Mr. Middleton signed prominently disclosed, in capital letters, that "T−Mobile requires ARBITRATION of Disputes UNLESS, for

---

[2] Due to the large number of customer records reflecting Mr. Middleton's acceptance of the T&Cs, this Motion focuses on the most relevant documents from Mr. Middleton's account, i.e., those which were signed by Mr. Middleton and which clearly set forth the arbitration clause in T-Mobile's T&Cs.

new customers, [THE CUSTOMER] OPT[S] OUT WITHIN 30 DAYS[.]" (*Id.*) The T&Cs in

effect at the time detailed the arbitration agreement:

> **\* Dispute Resolution and Arbitration. WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW ... , ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

(*Id.*, Ex. B at 3.) The arbitration provision states it is governed by the Federal Arbitration Act

(*id.*) and that arbitrations will be governed by the American Arbitration Association's ("AAA")

rules (*id.* at 4-5).

> T-Mobile's T&Cs allowed Mr. Middleton to opt out of arbitration, as long as he followed

the prescribed procedure. (Muzio Decl., Ex. B at 3-4.) The T&Cs explain:

> **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE.**

(*Id.*) Mr. Middleton did not opt out of arbitration. (*Id.* ¶ 23.)

As a long-standing T-Mobile customer, Mr. Middleton has been an active user of T-

Mobile's service. (Muzio Decl. ¶ 24.) In the past six years, Mr. Middleton has confirmed his

acceptance of T-Mobile's T&Cs over ten more times, having electronically signed receipts for

device purchases, service plans, and Equipment Installment Plan ("EIP") contracts, which refer

in plain language to T-Mobile's T&Cs and its arbitration agreement. (*Id.*, Exs. F, H-O, Q.) In

particular:

- On March 11, 2016, Mr. Middleton signed an agreements that included the

  following arbitration language: "T-MOBILE REQUIRES ARBITRATION OF

DISPUTES UNLESS I PREVIOUSLY OPTED OUT PURSUANT TO

T-MOBILE'S TERMS AND CONDITIONS." (Muzio Decl., Ex. F at 2.)

- Three agreements and receipts informed Mr. Middleton of T-Mobile's arbitration

  provision and provided the URL for the T&Cs as follows: "**Disputes. T-Mobile**

  **requires ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT**

  **WITHIN 30 DAYS OF ACTIVATION.** For details see www.T-Mobile.com/

  terms-conditions." Mr. Middleton signed these documents on September 5, 2016,

  November 25, 2016, and May 3, 2017. (Muzio Decl., Exs. I, L, & O.)

- Mr. Middleton signed five EIP Contracts in 2016 and 2017, each including an

  excerpt of the Dispute Resolution and Arbitration section from T-Mobile's T&Cs:

> This section describes how any disputes between you and T-Mobile
> will be resolved. WE AND YOU EACH AGREE THAT, EXCEPT
> AS PROVIDED BELOW, ANY AND ALL CLAIMS OR
> DISPUTES IN ANY WAY RELATED TO OR CONCERNING
> THIS AGREEMENT, OUR PRIVACY POLICY, OUR
> SERVICES, EQUIPMENT, DEVICES OR PRODUCTS,
> INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED
> BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.
> This includes any claims against others relating to services or
> equipment provided or billed to you (such as our suppliers, dealers
> or vendors) when you also assert claims against us in the same
> proceeding. This agreement affects interstate commerce so that the
> Federal Arbitration Act and federal arbitration law apply (despite
> the choice of law provision below). THERE IS NO JUDGE OR
> JURY IN ARBITRATION, AND COURT REVIEW OF AN
> ARBITRATION AWARD IS LIMITED. THE ARBITRATOR
> MAY AWARD ON AN INDIVIDUAL BASIS THE SAME
> DAMAGES AND RELIEF AS A COURT (INCLUDING
> ATTORNEYS' FEES).

(*See, e.g.*, Muzio Decl., Ex. H at 4.) The documents go on to describe opt-out

procedures and other dispute resolution logistics. (*Id.*) Mr. Middleton signed

these agreements on August 19, 2016, October 28, 2016, November 11, 2016,

April 3, 2017, and May 3, 2017.  (Muzio Decl., Ex. H at 4; *id.*, Ex. J at 3; *id.*, Ex.

K at 3; *id.*, Ex. M at 5; *id.*, Ex. N at 4.)

The T&Cs' Dispute Resolution and Arbitration sections slightly varied over Mr.

Middleton and T-Mobile's relationship but were always similar in all material respects to the

language in the T&Cs in force at the time Mr. Middleton first used T-Mobile's service.  (*See*

Muzio Decl., Ex. B at 3; *cf. id.,* Ex. C at 3; *id.*, Ex. D at 12-13; *id.*, Ex. E at 12-13; *id.*, Ex. G at

12-13; *id.*, Ex. P at 13-14.)  In short, Mr. Middleton agreed to arbitrate claims and not to sue in

court over and over again in using T-Mobile's services.

### C.     Plaintiffs Claim Third Parties Improperly Accessed Mr. Middleton's Account.

In defiance of the arbitration agreements, Mr. Middleton and Veritaseum filed this action

on July 21, 2020, asserting claims for (1) violations of the Federal Communications Act,

(2) negligence, (3) violations of New York General Business Law §§ 349 & 350, (4) negligent

hiring, (5) negligent infliction of emotional distress, and (6) gross negligence.  (Compl. ¶¶ 16-

24.)  Each of Plaintiffs' claims arises from T-Mobile purportedly allowing an unauthorized "SIM

card swap," which allegedly allowed third-party hackers to take control of Mr. Middleton's line

of service on July 23, 2017.[3]  (*Id.* ¶ 6-7.)  Plaintiffs allege a team of hackers targeted them on

July 23, 2017, because Mr. Middleton is a "well-known holder of cryptocurrency and founder

and sole owner of Veritaseum, a cryptocurrency company."  (*Id.* ¶ 6.)  Following the SIM swap,

the bad actors allegedly used the SIM card in a mobile device to send and receive calls and text

messages from Mr. Middleton's phone line.  (*Id.* ¶ 7.)  Mr. Middleton claims the hackers used

---

[3] A Subscriber Identity Module ("SIM") card is a small card inserted into a cell phone
that stores data for cellular telephone subscribers and allows a network, like T-Mobile's, to link a
particular physical device to a particular phone number on the network.  (Compl. ¶ 4.)  Those
devices that rely on physical SIM cards can only operate on T-Mobile's network if a specific line
of service is actively linked to a SIM card in that specific mobile device.  (*Id.*)

this access to steal cryptocurrency created by Veritaseum, which Mr. Middleton claims is valued at $8.7 million.  (*Id.* ¶ 8.)

Even after the events alleged in Mr. Middleton's Complaint, Mr. Middleton continued to agree to arbitrate any disputes with T-Mobile.  (Muzio Decl., Ex. Q (March 22, 2018 agreement that includes notification of the arbitration provision and that use of T-Mobile service is acceptance of the T&Cs).)  Mr. Middleton continues to use T-Mobile's service today.  (*Id.* ¶ 24.)

### III.    ARGUMENT

The Federal Arbitration Act ("FAA") applies to the T-Mobile T&Cs because, by definition, a contract for telecommunication services affects interstate commerce.  *See* 9 U.S.C. §§ 1-2; *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47 (2d Cir. 2000); *see generally Goldberg v. Sweet,* 488 U.S. 252, 254-55 (1989) (telecommunications industry constitutes interstate commerce).[4]  Moreover, the FAA applies because the contracts between T-Mobile and Mr. Middleton are contracts between citizens of different states.  (Compl. ¶¶ 19-21.)  Contracts between citizens of different states affect commerce, rendering the FAA applicable.  *See Hermès of Paris, Inc. v. Swain*, 867 F.3d 321, 324 (2d Cir. 2017).

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements[,] … to place arbitration agreements upon the same footing as other contracts[,]" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), and "to ensure the

---

[4] The T&Cs' choice of law provision explicitly state that the FAA governs the agreement. (Muzio Decl., Ex B at 25, *id.*, Ex. G at 26, *id.*, Ex. H at 16, *id.*, Ex. I at 16, *id.*, Ex. K at 16, *id.*, Ex. T at 16-17.)  *See Preston v. Ferrer*, 552 U.S. 346, 353 (2009) (applying FAA's procedural rules pursuant to choice-of-law clause).

enforcement of arbitration agreements according to their terms[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011).[5]  An "emphatic federal policy … favor[s] … arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

Pursuant to the FAA, a court must compel arbitration where:  (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).  "All reasonable inferences must be drawn in favor of the non-moving party." *Mumin v. Uber Techs., Inc.,* 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017).  When an arbitration provision satisfies both conditions, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).[6]  As explained below, both conditions are satisfied here.  Plaintiffs should be compelled to arbitrate their claims against T-Mobile.

---

[5] The FAA preempts the New York state rule prohibiting certain types of arbitration clauses.  *See Schiffer v. Slomin's, Inc.*, 48 Misc. 3d 15, 19, 11 N.Y.S.3d 799, 802 (2d Dep't 2015) ("General Business Law § 399–c is a categorical rule prohibiting mandatory arbitration clauses in consumer contracts, and thus, at least where there exists a nexus with interstate commerce, is displaced by the FAA.").

[6] Although the arbitration agreements are subject to the FAA, the New York Arbitration Law imposes the same mandate that Mr. Middleton's arbitration agreements with T-Mobile be enforced.  That statute provides:  "A written agreement to submit any controversy thereafter arising … to arbitration is enforceable … ." C.P.L.R. § 7501.  The statute thus codifies New York's "long and strong public policy favoring arbitration." *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49, 666 N.Y.S.2d 990, 995 (1997).  As the New York Court of Appeals has explained, "New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." *Id.* at 49-50, 666 N.Y.S.2d at 996 (citation and internal quotation marks omitted).

**A.      Plaintiffs Should Be Compelled to Arbitrate Their Claims.**

**1.      Courts Regularly Enforce T-Mobile's Arbitration Agreement.**

Courts, including this one, routinely enforce T-Mobile's arbitration agreement.  *See Moore v. T-Mobile USA, Inc.*, 2012 WL 13036858, at *7 (E.D.N.Y. Sept. 28, 2012); *Moore v. T-Mobile USA, Inc.,* 548 F. App'x 686, 686–87 (2d Cir. 2013) (affirming this Court's decision to enforce T-Mobile's arbitration provision); *see also Ozormoor v. T-Mobile, USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (holding T-Mobile's arbitration clause was not unconscionable and compelling arbitration of plaintiff's claim); *Mohammad v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *4 (E.D. Cal. Nov. 29, 2018) (finding arbitration clause not procedurally or substantively unconscionable; enforcing arbitration in SIM-swap case); *Meyer v. T-Mobile USA, Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) ("the arbitration agreement is not procedurally unconscionable"); *Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424, at *7 (E.D. Cal. Dec. 21, 2011) (finding T-Mobile's arbitration agreement was not procedurally unconscionable); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1225 (M.D. Fla. 2013) ("Not only does the Service Agreement incorporate T-Mobile's Terms & Conditions of service, which include a detailed arbitration provision, the Service Agreement itself put Plaintiff on notice that arbitration of any disputes involving T-Mobile was mandatory if Plaintiff did not timely opt-out."); *McGinnis v. T-Mobile USA, Inc.*, 2009 WL 4824002, at *8 (W.D. Wash. Dec. 9, 2009) (holding T-Mobile's mandatory arbitration provision valid and enforceable); *Destinations by Design, LLC v. T-Mobile USA, Inc.*, 2010 WL 1687752, at *8 (S.D. Ohio Apr. 26, 2010) (granting T–Mobile's motion to stay litigation and compel arbitration as to all of plaintiff's claims); *Whaley v. T-Mobile, USA, Inc.*, 2013 WL 5155342, at *4 (E.D. Ky. Sept. 12, 2013) (compelling arbitration).

This Court should once again enforce T-Mobile's arbitration agreement requiring customers to resolve their disputes through arbitration using AAA, the nation's leading provider of arbitration services, based on—as detailed below—Mr. Middleton's repeated agreement to arbitrate his disputes with T-Mobile.

### 2.  Mr. Middleton Repeatedly Agreed to Arbitrate Disputes With T-Mobile.

"Because an agreement to arbitrate is a creature of contract ... the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp*., 293 F.3d 563, 566 (2d Cir. 2002).  Here, New York law controls the issue, since Mr. Middleton's billing address is in New York (Muzio Decl. ¶ 25), and the T&Cs provide for application of "the laws of the state … in which [the customer's] billing address in [T-Mobile's] records is located" (*id*., Ex B at 25; *id*., Ex. C at 26; *id*., Ex. D at 16; *id*., Ex. E at 16; *id*., Ex. G at 16; *id*., Ex. P at 16-17).

"Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).  A "party will not be excused from his failure to read and understand the contents of a document ... a party who accepts an agreement is conclusively presumed to know its contents and assent to them." *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 701-02 (S.D.N.Y. 2017).  It makes no difference to enforceability that a party does not bargain the terms of the contract.  "Even a form contract that is offered on a 'take it or leave it' basis, without a chance to opt out, may be valid." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017).  And where, as here, a party has "a meaningful opportunity to opt out," the "agreement is not procedurally unconscionable." *Id*.

Here, Mr. Middleton agreed to arbitration over *eleven* times.  The agreements he signed either contained the arbitration provision (Muzio Decl., Exs. H, J, K, M, N, Q) or alerted Mr. Middleton to the arbitration obligation and directed him to T-Mobile's T&Cs, which contained the full arbitration provision (*id.*, Exs. F, I, L, O).  The agreements emphasized the arbitration agreement by putting it in capitalized letters or bold font.  (*Id.*, Exs. A, F, H-O, Q.)  In some instances, the sentence regarding arbitration was followed by a direct URL link to the full provision (*id.* Exs. I, L, O).  *See Simeon v. Domino's Pizza LLC*, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019) (finding a bolded arbitration provision to be enforceable because it was not "accessible only via a small and distant hyperlink" or "buried in the middle to bottom of a webpage").

In these circumstances, Mr. Middleton's repeated signatures, whether digital or handwritten, unambiguously evidence his assent to T-Mobile's arbitration requirement.  *See Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149 (2d Cir. 2004) (finding a signature valid evidence of acceptance of arbitration under New York law).[7]  Further, T-Mobile's T&Cs gave Mr. Middleton an opportunity to opt out of arbitration agreement (*see* Muzio Decl., Ex. B at 3; *cf. id.*, Ex. C at 3; *id.*, Ex. D at 12-13; *id.*, Ex. E at 12-13; *id.*, Ex. G at 12-13; *id.*, Ex. P 13-14), but he did not opt out (*id.* ¶ 23).  Instead, Mr. Middleton continued to use his lines after activation (*id.* ¶ 24), manifesting further assent to and acceptance of the T&Cs.

---

[7] As this Court has previously ruled in a similar action regarding T-Mobile's T&Cs, each signed document incorporated the T&Cs by reference.  *See Moore*, 2012 WL 13036858, at *7. New York contract law provides that "a paper referred to in a written instrument and sufficiently described may be made a part of the agreement as if incorporated into the body of it." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (citing *Jones v. Cunard S.S. Co.*, 238 A.D. 172, 173, 263 N.Y.S. 769, 771 (2d Dep't 1933)).  Here, each document identifies the T&Cs by its full and proper title, allowing customers to identify the document "beyond all reasonable doubt."  *Starr Indem. & Liab. Co. v. Brightstar Corp*., 388 F. Supp. 3d 304, 341 (S.D.N.Y. 2019).

Courts routinely enforce arbitration in substantially similar circumstances. *See, e.g.*, *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993) (enforcing arbitration clause when it was included in a policy that was incorporated by reference); *Pool Deals, LLC v. United Parcel Serv., Inc.*, 454 F. Supp. 3d 208, 214 (W.D.N.Y. 2020) (finding a reference to incorporated terms and conditions that the arbitration provision was clear and unequivocal when they were identified by title and clearly described). This Court should likewise require Mr. Middleton to honor his repeated agreements to arbitrate.

### 3. Veritaseum Also Must Arbitrate Its Claims against T-Mobile.

Veritaseum also must arbitrate its claims against T-Mobile based on established contractual principles. While "arbitration is a matter of contract … it does not follow … that … an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 186 (E.D.N.Y. 2006) (internal quotes and citation omitted). "Non-signatories to an arbitration agreement may … be bound according to ordinary principles of contract and agency[,] … includ[ing] … estoppel." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (internal quotations and citations omitted); *accord Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). Principles of equitable estoppel and agency apply in this case to Veritaseum's claims against T-Mobile based on Mr. Middleton's use of a T-Mobile line of service pursuant to the T&Cs.

*First*, the doctrine of equitable estoppel is meant to stop a plaintiff from "trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing a claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (quotation marks and alterations omitted). Thus, when a non-signatory has knowingly exploited

an agreement containing an arbitration clause for its "direct benefit," the non-signatory is subject to that arbitration clause.  *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999).

Here, Plaintiffs' Complaint alleges Mr. Middleton's T-Mobile account was used "for the benefit of Veritaseum."  (Compl. ¶ 29; *see also id.* ¶ 6 (alleging Mr. Middleton "maintained" "his account at T-Mobile ... for the use of Veritaseum and himself."); *id.* ¶ 20 ("Mr. Middleton is the sole owner of Veritaseum and he used his T-Mobile account for the business of Vertiaseum.").)  Veritaseum brings its claims (which are identical to Mr. Middleton's) based on third-party hackers' purported infiltration of Mr. Middleton's T-Mobile account and resulting harm to Veritaseum.  (*Id.* ¶¶ 6-7, 15-16, 58.)

As this Court has held in indistinguishable circumstances, third-party users "of an account [are] bound by the terms governing the account," including arbitration provisions. *Nicosia*, 384 F. Supp. 3d at 272 (collecting cases); *see also Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004) (plaintiff, who used stepfather's AOL account, was bound by a forum-selection provision appearing in the account's member agreement; "[a]ny other conclusion would permit individuals to avoid the Defendant's Terms of Service simply by having third parties create accounts and then using them as the Plaintiff did").  Having availed itself of T-Mobile's services for years, Veritaseum cannot now disclaim the terms and conditions governing Mr. Middleton's use of T-Mobile service—as reflected in the various Service Agreements, product purchases, and EIP contracts that require arbitration of disputes with T-Mobile.

*Second*, the Court should compel Veritaseum to arbitrate its claims because Mr. Middleton was acting as Veritaseum's agent when he agreed to arbitrate disputes with T-Mobile.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  *TIC Park Ctr. 9, LLC v. Wojnar*, 2017 WL 7733134, at *3 (E.D.N.Y. Apr. 7, 2017) (quoting Restatement (Second) of Agency § 1 (1958)).  As this Court found in *Simply Fit of North America, Inc. v. Poyner*, a party that is a principal or otherwise in control of an entity can be deemed that entity's agent for enforcing an arbitration clause.  579 F. Supp. 2d 371, 382 (E.D.N.Y. 2008).  In that case it was also relevant that the "complaint was replete with allegations" of the non-signatories' involvement with the agreement.  *Id.*  Here, the Complaint concedes Mr. Middleton "was the sole member and owner of Veritaseum," "Veritaseum paid for the T-Mobile account," and "Mr. Middleton accessed his Veritaseum accounts, wallets and exchanges through his T-Mobile account."  (Compl. ¶ 29.)

Thus, Veritaseum, like its owner and agent Mr. Middleton, should be compelled to bring its claims in arbitration.

**B.    The Arbitrator Must Decide Any Challenge to the Scope or Enforceability of the Arbitration Provision.**

As explained above, both Mr. Middleton and Veritaseum should be compelled to arbitrate their dispute with T-Mobile.  To the extent Plaintiffs challenge the scope or enforceability of the arbitration provision, those disputes must go to the arbitrator.

**1.    The T&Cs Delegated Issues of Arbitrability to the Arbitrator.**

"[W]hen … parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (citations omitted).  In those circumstances, the Court "possesses no power to decide the arbitrability issue" and must compel arbitration of arbitrability.  *Henry*

*Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019); *see also Arkin v.*

*DoorDash, Inc.*, 2020 WL 4937825, at *4 (E.D.N.Y. Aug. 24, 2020) (Garaufis, J.) (granting

motion to compel arbitration and delegating all issues of arbitrability to the arbitrator); *Ortega v.*

*Uber Techs. Inc.*, 2017 WL 1737636, at *2 (E.D.N.Y. May 2, 2017) (Garaufis, J.) (same).

Every version of T-Mobile's T&Cs incorporates the AAA arbitration rules.  (*See* Muzio

Decl., Ex. B at 4; *id.*, Ex. C at 4; *id.*, Ex. D at 14; *id.*, Ex. E at 14.)  And AAA's rules provide that

"[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope, or validity of the arbitration agreement or to the

arbitrability of any claim."  (Decl. of James H. Moon, Ex. R (AAA Consumer Arbitration Rules)

R-14(a); *id.*, Ex. S (AAA Commercial Arbitration Rules) R-7.)

"The Second Circuit has held that where, as here, a broad arbitration provision

incorporates the AAA Arbitration Rules, the arbitrator and not the courts must decide the

threshold issue of arbitrability."  *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at *7 (S.D.N.Y.

Sept. 12, 2017) (citing *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *see*

*also Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d

Cir. 2013), *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, 167 F. App'x. 266, 268

(2d Cir. 2006) ("The intent of the parties to commit the question of arbitrability to the arbitrator

is further demonstrated by the incorporation of the rules of the [AAA] that empower the

arbitrator to determine issues of arbitrability."); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d

400, 415 (E.D.N.Y. 2014) ("[V]irtually every circuit to have considered the issue has determined

that incorporation of the [AAA] … rules constitutes clear and unmistakable evidence that the

parties agreed to arbitrate arbitrability.") (alteration and quotation marks omitted).

Because the parties delegated arbitrability issues to the arbitrator pursuant to AAA rules, the Court should compel arbitration and allow the arbitrator to resolve any purported issues of arbitrability.  *See Schein*, 139 S. Ct. at 529.

### 2.     In Any Event, the Dispute Falls Within the Arbitration Provision.

Even if the Court were to independently consider the scope of the arbitration agreement (which it should not under *Schein*), Mr. Middleton's and Veritaseum's claims fall squarely within T-Mobile's broad arbitration agreement.

Once a court determines an arbitration agreement binds the parties, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific disputes).  Where the parties have agreed to a broad arbitration clause, the courts recognize a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs.*, 475 U.S. at 650 (citation omitted); *accord Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that broad arbitration clause creates "a presumption that the claims are arbitrable").  To rebut the presumption, the party resisting arbitration must show the agreement does not encompass the claims at issue.  *See Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, the arbitration provision in the applicable T&Cs encompasses "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION**."  (Muzio Decl., Ex. B at 3; *id.*, Ex. C at 3; *id.*, Ex. D at 12-13; *id.*, Ex. E at 12-13; *id.*, Ex. G at 12-13; *id.*, Ex. P 13-14.)  The provision "is precisely the kind of broad arbitration clause that justifies a presumption of arbitrability."  *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (enforcing clause requiring arbitrating "[a]ny dispute, controversy or claim arising under or in connection with" agreement), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).  This Court has previously described T-Mobile's arbitration provision as "very broad."  *Moore*, 2012 WL 13036858, at *7.  Courts recognize "[a] clause governing claims 'related to' or 'concerning' the parties' agreement applies to a broader range of claims than a clause governing claims 'arising under' the agreement."  *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468, 470-71 (D.N.J. 2007).

Plaintiffs' claims rest on T-Mobile's alleged failure to safeguard their information, including a claim that it honored an unauthorized request for a SIM card, which in turn allowed third-party fraudsters to access the line of service T-Mobile provided to Plaintiffs.  (Compl. ¶¶ 18-64.)  As pled, these claims, including the statutory claims, arise directly from T-Mobile's services, privacy policy, and products.  The arbitration clause thus covers all of Plaintiffs' claims.  *See, e.g.*, *Moore*, 2012 WL 13036858, at *7 (finding T-Mobile's broad arbitration clause encompassed claims, including statutory claims, arising from a service agreement); *Butto v. Collecto Inc.*, 802 F. Supp. 2d 443, 448 (E.D.N.Y. 2011) (finding an arbitration clause that covers "all disputes" to "apply to most, if not all, legal disputes" between the parties").

**C.      The Court Should Stay this Action Pending Arbitration.**

Section 3 of the FAA provides that, where a valid arbitration agreement requires parties to submit their dispute to binding arbitration, the district court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  As the Second Circuit has succinctly stated, "the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."  *Katz*, 794 F.3d at 347.  Because Mr. Middleton and Veritaseum must arbitrate their claims, the Court should stay this action pending completion of arbitration.[8]

## IV.      CONCLUSION

T-Mobile respectfully requests that the Court (a) compel Plaintiffs to arbitrate their claims against T-Mobile, and (b) stay this action pending the outcome of arbitration.

---

[8] Even if the Court were to decide that Veritaseum's claims are not subject to arbitration—despite the allegations making clear that Veritaseum's claims are based on its use of Mr. Middleton's T-Mobile account for its benefit (Compl. ¶¶ 6, 20, 29, 58)—the Court should stay those claims pending arbitration of Mr. Middleton's claims because of the "near-complete factual overlap."  *Ferro v. Allied Interstate, LLC*, 2019 WL 3021234, at *7 (E.D.N.Y. July 10, 2019) (staying non-arbitrable claims).  "A stay is particularly appropriate if the arbitrable claims and non-arbitrable claims are factually connected, such that a stay would 'promote judicial economy, avoidance of confusion and possible inconsistent results.'"  *Id.* (citing *Champion Auto Sales, LLC v. Polaris Sales Inc.*, 943 F. Supp. 2d 346, 355 (E.D.N.Y. 2013)); *see also Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011); *Moore v. Interacciones Global, Inc.*, 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants." (citations omitted)).

Dated:  Los Angeles, CA
        December 18, 2020

                                    Respectfully submitted,

                                    DAVIS WRIGHT TREMAINE LLP

                                    By: /s/ James H. Moon

                                        John M. Magliery
                                        DAVIS WRIGHT TREMAINE LLP
                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY  10020-1104
                                        (212) 489-8230 Phone
                                        (212) 489-8340 Fax

                                        Stephen M. Rummage (*pro hac vice*)
                                        DAVIS WRIGHT TREMAINE LLP
                                        920 Fifth Avenue, Suite 3300
                                        Seattle, WA 98104
                                        Tel:  (206) 757-8136
                                        Fax:  (206) 757-7700

                                        James H. Moon (*pro hac vice*)
                                        DAVIS WRIGHT TREMAINE LLP
                                        865 South Figueroa Street, Suite 2400
                                        Los Angeles, CA 90017
                                        Tel:  (213) 633-6819
                                        Fax:  (213) 633-6899

                                        *Attorneys for Defendant T-Mobile US, Inc.*