# BRUNDIDGE & STANGER, P.C.

CARL I. BRUNDIDGE
THEODORE C. SHIH*

MISUNG LEE
DAVID E. MOORE*
LENNA MAUSKAR*
KUMIKO KITAOKA

OF COUNSEL
THOMAS L. PETERSON*
SHERIDAN L. ENGLAND
ISAAC A. ANGRES, PH.D.**

* **Bar Membership Other Than
Virginia or New York
** Registered Patent Agent

ATTORNEYS AT LAW

1925 BALLENGER AVENUE, SUITE 560

ALEXANDRIA, VIRGINIA 22314

———————

(703) 684-1470

November 11, 2021

NEW YORK OFFICE:
1180 AVENUE OF THE AMERICAS
8TH FLOOR
NEW YORK NY 10036
(212) 382-4635

FACSIMILE: (703) 684-1460

EMAIL:
CBRUNDIDGE@BRUNDIDGE-STANGER.COM

The Honorable Nicholas G. Garaufis
United States District Court Judge
U.S. District Court for the Eastern District of New York
United States Courthouse
Room 1426 S
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:    Plaintiffs' Letter Brief Regarding the Question of Contract Formation**
      <u>Middleton et al v. T-Mobile US, Inc. - Civil action No. 1:20-cv-03276-NGG-JRC</u>

Your Honor:

As instructed in the Court's Order of October 28, 2021, please accept this Letter Brief in support of Plaintiffs' position that a cognizable contract mandating arbitration has not been formed between the parties in the above-referenced matter. Plaintiffs support their position based on the following grounds:

Plaintiffs acknowledge that the question of whether the parties have agreed to arbitrate, specifically the "question of arbitrability," is a critical issue suitable for judicial determination. Thus, the threshold question of whether the parties agreed to arbitrate must be determined by state contract law principles. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

Plaintiffs also acknowledge that the Federal Arbitration Act (the "FAA") provides that "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of [the] contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. However, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trustees. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

"[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Further and importantly, according to *Nicosia v. Amazon.com, Inc.*, 834 at 229, "if there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4 ("If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.")); *accord Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001)."

Thus, whether an agreement to arbitrate exists between the parties is based on a determination of whether a reasonable notice of the required terms and conditions was provided to the party against

Letter Brief Contract Formation
Civil action No. 1:20-cv-03276-NGG-JRC
November 11, 2021
Page 2 of 5

whom the agreement is to be enforced and whether an objective manifestation of mutual assent was provided by said party to the required terms and conditions. *Nicosia*, 834 at 229.

In *Nicosia v. Amazon.com*, Nicosia used an existing Amazon account (created on June 9, 2008), not registered by Nicosia, to make purchases in January and April of 2013. *Nicosia*, 834 at 234. Nicosia, upon making his purchases, encountered Registration and Order pages having a link to Amazon's "Conditions of Use" that included a mandatory arbitration clause. *Nicosia*, 834 at 227. In particular, the relevant Order page included a "Place your order" button and text on the web page stating, "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," with the phrase "conditions of use" being a hyperlink to the 2012 Conditions of Use. *Id.*

The Second Circuit held that Amazon failed to provide Nicosia with proper notice and failed to prove Nicosia was on notice and agreed to mandatory arbitration as a matter of law. The Court distinguished between a "clickwrap" agreement and a "browserwrap" agreement, holding that clicking a "Place your order" button *does not* specifically manifest assent to the additional terms since the purchaser is not specifically asked whether she agrees through a physical mouse click or otherwise take action to indicate "I agree" to the listed terms and conditions (a common feature of "clickwrap" agreements). *Nicosia*, 834 at 233 (*citing "Register.com v. Verio, Inc.*, 356 F.3d 393, 402–03 (2d Cir. 2004) and *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 31–32 (2d Cir. 2004)).

The present situation is very similar to that in *Nicosia v. Amazon.com* because the Plaintiffs were not on notice that the terms and conditions included a mandatory arbitration clause, and the Plaintiffs did not indicate specific agreement – through a mouse click or other action – to those terms and conditions. Specifically, the present situation includes the following facts.

On or about March 21, 2014, service was initiated by a prior account holder ("Obu Kwame") on a line within T-Mobile's network ending in 5953 ("5953 Line"), which had a billing number ending in 8730 (the "8730 Account"). (*see* Exhibit A, Middleton Decl. ¶ 1). On or about October 2014, Mr. Middleton was added as an authorized user of the 5953 Line, and Mr. Middleton's service on the 5953 Line was activated by T-Mobile. (Middleton Decl. ¶ 2). At the time Mr. Middleton's service was activated by T-Mobile, Mr. Middleton: (a) was not informed nor was he made aware of any required mandatory arbitration to resolve disputes between him and T-Mobile by T-Mobile. (Middleton Decl. ¶ 3), (b) was not informed nor made aware of an opportunity to "opt out" of the required mandatory arbitration by T-Mobile. (Middleton Decl. ¶ 4), and (c) was not asked by any T-Mobile personnel, nor received any communication from T-Mobile, to confirm whether Mr. Middleton desired to "opt out" of the required mandatory arbitration. (Middleton Decl. ¶ 5). Further, at no time was Mr. Middleton given 30 days-notice of any material change to any of the terms of the T-Mobile Terms and Conditions warranting cancellation of the 5953 Line and allowed 14 days to provide a response. (Middleton Decl. ¶ 6).

When transactions were conducted between Mr. Middleton and T-Mobile, the format of any "Terms and Conditions" (hereinafter "T&C") and receipts that were provided to Plaintiff was on a 3" x 6" customer display of a Point of Sale (hereinafter "POS") terminal. (*see* Exhibit B). (Middleton Decl. ¶ 13). Exhibit B provides a picture of the current configuration of a 3"x 6" customer display of the T-

Mobile POS display at the T-Mobile stores in Brooklyn NY where Mr. Middleton conducted purchases of devices and equipment and other transactions with Defendant T-Mobile. (Middleton Decl. ¶ 14). This configuration as per Exhibit B has a low resolution, low light display for customer use that is fixed to the countertop and said display has no internet access for consumer use. (Middleton Decl. ¶ 15). The configuration as shown in Exhibit B was the very same configuration used by the T-Mobile stores in Brooklyn NY during the years of 2014-2017, with the exception that the customer display was smaller and of lower resolution and lighting, but still had no Internet access. (Middleton Decl. ¶ 16).

Importantly, the customer display of the POS terminal did not permit Plaintiff to conduct a full and complete review and inspection of a document on the display, nor allowed access to the Internet to a document that was referenced in the document being displayed to permit Plaintiff's further review and inspection of the referenced material. (Middleton Decl. ¶ 17). Furthermore, the POS terminal did not ask, and Mr. Middleton did not indicate, his agreement to specific terms and conditions through a specific button, mouse click or other designator requiring input, to assert "I agree" to mandatory arbitration. When a signature was requested, Mr. Middleton was instructed to draw his signature on the customer display only and an electronic representation of said drawn signature was pasted by the T-Mobile POS onto documents it deemed required a signature. (Middleton Decl. ¶ 18). At no time was Mr. Middleton prompted by any type of notice on the customer display or asked by any T-Mobile personnel to confirm whether Plaintiff consented, or agreed, to the entirety of any allegedly applicable T&C, assented to mandatory arbitration or indicate whether he desired to "opt out" of any required mandatory arbitration. (Middleton Decl. ¶ 19).

During the Limited Discovery ordered by this Court, Defendant T-Mobile produced a receipt it alleged to be the document evidencing the Activation of Plaintiff's account. (*see* Exhibit C). (Middleton Decl. ¶ 20). The alleged Activation receipt dated October 17, 2014 was apparently intended for "OBU KWAME" and not Mr. Middleton, as indicated on the first line of the alleged receipt after the heading including the address of the "T-Mobile 9465" location and its "DCA License Number". (Middleton Decl. ¶ 21). The alleged Activation receipt appears to be for the in-store purchase of equipment by "OBU KWAME" including Airtime and a SAM N910T Galaxy Note 4 White Kit. (Middleton Decl. ¶ 22). Mr. Middleton did not sign nor recall receiving the alleged Activation receipt. (Middleton Decl. ¶ 23).

Of particularly note, the alleged Activation receipt did not include a full copy of the then effective Terms & Conditions (T&Cs), a full copy of the Mandatory Arbitration clause nor a copy of the "Opt-Out" clause as set forth in the then effective T&Cs. (Middleton Decl. ¶ 24). Further, the alleged Activation receipt, as produced by T-Mobile, only included the following statement: "T-MOBILE REQUIRES ARBITRATION OF DISPUTES UNLESS I PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS." (Middleton Decl. ¶ 25). Significantly, the alleged Activation receipt did not include a "Check-Box" or any other such prompt at which Mr. Middleton must indicate his assent to requirement of arbitration or his Opt-Out" of an alleged "Mandatory Arbitration," which is not noticed on the alleged Activation receipt, to complete a transaction. (Middleton Decl. ¶ 26).

Letter Brief Contract Formation
Civil action No. 1:20-cv-03276-NGG-JRC
November 11, 2021
Page 4 of 5

As can be seen from the above noted statement in the alleged Activation receipt, there is no mention of "Mandatory Arbitration." The alleged Activation receipt simply states "T-MOBILE REQUIRES ARBITRATION OF DISPUTES," a statement that clearly does not specify arbitration with the Defendant is "Mandatory" and clearly does not provide any information regarding an "Opt-Out" clause.

Therefore, T-Mobile failed to provide sufficient notice to Mr. Middleton of the T&Cs, Mandatory Arbitration requirement, or the right to "Opt-Out" of the Mandatory Arbitration requirement. Since there exists a material dispute of fact as to whether an agreement exists that compels arbitration between the parties, this critical issue cannot be decided as a matter of law. *Nicosia*, 834 at 229. Further, as in *Nicosia*, T-Mobile failed to obtain from Mr. Middleton an objective manifestation of mutual assent to the T&Cs and the Mandatory Arbitration requirement. Accordingly, determination of whether an objective manifestation of mutual assent to mandatory arbitration exists between the parties cannot be determined as a matter of law. *Id.*

Further, during the Limited Discovery as ordered by the Court, Defendant T-Mobile produced several other alleged receipts namely receipts dated April 24, 2015, March 11, 2016, August 19, 2016, September 5, 2016, September 28, 2016, November 18, 2016, November 25, 2016, April 3, 2017, May 3, 2017, and March 22, 2018. (Middleton Decl. ¶ 27). Each these alleged receipts are irrelevant to the present action in that they are either receipts to the prior account holder Obu Kwame or are directed to equipment, devices or services for other Lines on the T-Mobile network (i.e. Lines 6466788512, 3472829870, (973) 960-9913, etc.), not the 5953 Line. (Middleton Decl. ¶ 28).

In any event each of these alleged receipts were presented on a 3" x 6" customer display of a Point of Sale (hereinafter "POS") terminal described above. (*see* Exhibit B). As noted above, the customer display of the POS terminal did not permit Plaintiff to conduct a full and complete review and inspection of a document on the display, nor allowed access to the Internet to a document that may have been referenced in the document being displayed to permit Plaintiff's further review and inspection of the referenced material. (Middleton Decl. ¶ 29). Further, for each of these alleged receipts, at no time was Plaintiff prompted by any type of notice on the customer display or asked by any T-Mobile personnel to confirm whether Plaintiff consented, or agreed, to the entirety of any allegedly applicable T&C, assented to mandatory arbitration or indicate whether he desired to "opt out" of any required mandatory arbitration. (Middleton Decl. ¶ 30).

Therefore, as in *Nicosia v. Amazon.com*, with respect to each of these alleged receipts T-Mobile has failed to provide sufficient notice to Mr. Middleton of the T&Cs, Mandatory Arbitration requirement, and the right to "Opt-Out" of the Mandatory Arbitration requirement. *See Nicosia*, 834 at 229. Further, as in *Nicosia*, T-Mobile has failed to obtain from Mr. Middleton an objective manifestation of mutual assent to the T&Cs, the Mandatory Arbitration requirement or an indicate of whether Mr. Middleton agreed to the Opt-Out provision, as a matter of law. *Id.* Further, at no time was Mr. Middleton given 30 days-notice of any material change to any of the terms of the T-Mobile Terms and Conditions warranting cancellation of the 5953 Line and allowed 14 days to provide a response.

Letter Brief Contract Formation
Civil action No. 1:20-cv-03276-NGG-JRC
November 11, 2021
Page 5 of 5

      Accordingly, the present federal action properly belongs in this Court and is not subject to the arbitration clause in T-Mobile's Terms and Conditions.

      Therefore, Plaintiff respectfully requests that the Court deny Defendants Motion to Compel Arbitration and Stay Action and proceed with the present action in this court.

      Very truly yours,
      BRUNDIDGE & STANGER, P.C.

      _____/s/_____

CIB/cb      Carl I. Brundidge