# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEY YORK

| | |
|---|---|
| REGINALD MIDDLETON and VERITASEUM, LLC, | |
| Plaintiff, | Case No.: 1:20-cv-03276 NGG-RLM |
| v. | |
| T-MOBILE US, INC., | |
| Defendants. | |

## REGINALD MIDDLETON DECLARATION

I, Reggie Middleton hereby declare:

1. On or about March 21, 2014 service was initiated on a line on T-Mobile's network ending in 5953 ("5953 Line"), which had a billing number ending in 8730 (the "8730 Account").

2. On October 17, 2014, my service on 5953 Line was activated by T-Mobile by the addition of me as an authorized user.

3. At the time my service was activated by T-Mobile on October 17, 2014, I was not informed nor made aware of any required mandatory arbitration to resolve disputes between me and T-Mobile by T-Mobile.

4. Further, at the time my service was activated by T-Mobile on October 17, 2014, I was not informed nor made aware of an opportunity to "opt out" of the required mandatory arbitration by T-Mobile.

5. Still further, at the time my service was activated by T-Mobile on October 17, 2014, I was not asked by any T-Mobile personnel, nor received any communications from T-Mobile, to confirm whether I desired to "opt out" of the required mandatory arbitration.

6. Even further still, at no time was I given 30 days notice of any material change to any of the terms of the T-Mobile Terms and Conditions warranting cancellation of the 5952 Line and allowed 14 days to provide a response.

7. The injuries I suffered began on July 23, 2017 and extended through November 29, 2019.

8. T-Mobile has admitted to its failures to protect my personal and confidential information from hackers and its employees by two letters dated June 20, 2018 and August 12, 2020.

9. These admitted failures by T-Mobile were the direct and proximate cause of the injuries suffered by me.

10. The June 20, 2018 letter from T-Mobile admits to failures to protect my personal and confidential information from hackers and its employees on July 23, 2017, August 22, 2017, September 16, 2017 and twice on October 4, 2017.

11. The August 12, 2020 letter from T-Mobile admits to failures to protect my personal and confidential information from hackers and its employees on November 29, 2019.

12. These admitted failures by T-Mobile were the direct and proximate cause of the injuries suffered by me including the theft of over $8 Million in cryptocurrencies from me.

13. The format of any "Terms and Conditions" (hereinafter "T&C") and receipts that were provided to me, if any were provided, was on a 3" x 6" customer display of a Point of Sale (hereinafter "POS") terminal. (*see* Exhibit B).

14. Exhibit B provides a picture of the current configuration of a 3"x 6" customer display of the T-Mobile POS at the T-Mobile stores in Brooklyn NY where I conducted purchases of devices and equipment and other transactions with Defendant T-Mobile.

15. The configuration as per Exhibit B has a low resolution, low light display for customer use that is fixed to the countertop and has no internet access.

16. The configuration as shown in Exhibit B was used by the T-Mobile stores in Brooklyn NY during the years of 2014-2017.

17. The configuration as shown in Exhibit B did not permit a full and complete review and inspection of a document on the display by me, nor allowed access to the Internet to a document that was referenced in the document being displayed to permit further review and inspection of the referenced material. Further, the POS terminal did not ask, and I did not indicate my agreement to specific terms and conditions through a specific button, mouse click or other designator requiring input to assert "I agree" to mandatory arbitration.

18. If a signature was requested, I was instructed to draw my signature on the 3" x 6" customer display and an electronic representation of said drawn signature was pasted by the T-Mobile POS onto documents it deemed required a signature.

19. At no time was I prompted by any type of notice on the customer display or asked by any T-Mobile personnel to confirm whether I consented, or agreed, to the entirety of any allegedly applicable T&C or to confirm whether I desired to "opt out" of any required mandatory arbitration.

20. During the Limited Discovery as ordered by the Court, Defendant T-Mobile produced a document it alleged to be a receipt dated October 17, 2014 evidencing the Activation of my account. (*see* Exhibit C).

21. The alleged Activation receipt dated October 17, 2014 was apparently intended for "OBU KWAME", not me, as per the first line of the alleged receipt after the heading including the address of the "T-Mobile 9465" location and its "DCA License Number".

22. Further, the alleged Activation receipt dated October 17, 2014 appears to be for the in-store purchase of equipment by "OBU KWAME" including Airtime and a SAM N910T Galaxy Note 4 White Kit.

23. I did not sign nor do I recall receiving the alleged Activation receipt dated October 17, 2014.

24. The alleged Activation receipt dated October 17, 2014 did not include a full copy of the then effective Terms & Conditions (T&Cs), a full copy of the Mandatory Arbitration clause nor a copy of the "Opt-Out" clause as set forth in the then effective T&Cs.

25. The alleged Activation receipt dated October 17, 2014 only included the following statement: "T-MOBILE REQUIRES ARBITRATION OF DISPUTES UNLESS I PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS".

26. The alleged Activation receipt dated October 17, 2014 did not include a "Check-Box" or any other such prompt at which I could indicate my assent to requirement of arbitration or my "Opt-Out" of an alleged "Mandatory Arbitration", which is not even noticed on the alleged Activation receipt dated October 17, 2014.

27. During the Limited Discovery as ordered by the Court, T-Mobile produced several other alleged receipts namely receipts dated April 24, 2015, March 11, 2016, August 19, 2016, September 5, 2016, September 28, 2016, November 18, 2016, November 25, 2016, April 3, 2017, May 3, 2017, and March 22, 2018.

28. Each these alleged receipts are irrelevant to the present action in that they are either receipts to the prior account holder Obu Kwame or are directed to equipment, devices or services for other Lines on the T-Mobile network (i.e. Lines 6466788512, 3472829870, (973) 960-9913, etc.), not the 5953 Line.

29. Each of these alleged receipts were presented on a 3" x 6" customer display of a POS terminal. (*see* Exhibit B). As noted above, the customer display of the POS terminal did not permit Me to conduct a full and complete review and inspection of a document on the display, nor allowed access to the Internet to a document that was referenced in the document being displayed to permit my further review and inspection of the referenced material. Further, the POS terminal did not ask, and I did not indicate my agreement to specific terms and conditions through a specific button, mouse click or other designator requiring input to assert "I agree" to mandatory arbitration.

30. Further, for each of these alleged receipts, at no time was I prompted by any type of notice on the customer display or asked by any T-Mobile personnel to confirm whether I consented, or agreed, to the entirety of any allegedly applicable T&C, assented to mandatory arbitration or indicate whether he desired to "opt out" of any required mandatory arbitration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of November 2021.

REGINALD MIDDLETON

*/s/ Reginald Middleton*